E-FILED
Monday, 23 January, 2023  03:53:15 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### URBANA DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 19-CR-20018** |
| | ) | |
| **STEVEN L. BOND** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER AND OPINION

This matter is now before the Court on Defendant Steven L. Bond's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 60. For the reasons set forth below, Defendant's Motion is DENIED.

## BACKGROUND

Defendant is currently serving an 88-month federal sentence for one count of Possession with the Intent to Distribute Oxycodone and one count of Possession with Intent to Distribute Hydrocodone. ECF No. 57. Defendant had a lawful prescription for hydrocodone and a prescription for tramadol but stated that he received significantly more pills than he was authorized by his prescription and that he sold pills from other suppliers as well as his own medication. ECF No. 51 at 7. For the purposes of sentencing, Defendant was found responsible for 145.2 grams of Oxycodone, .02 grams of methadone, 7.68 grams of hydromorphone, 108.81 grams of hydrocodone, .42 grams of morphine and .01 units of a schedule 4 substance. ECF No. 51 at 7–8. Defendant was sentenced on April 11, 2022 and was ordered to report to the Bureau of Prisons by July 5, 2022. ECF No. 57.

Defendant filed his motion *pro se* and the Government has responded. ECF Nos. 60, 70. Defendant has also filed numerous supplemental filings, additional letters, and additional exhibits. ECF Nos. 61, 62, 63, 64, 65, 66, 67, 68, 69, 74, 75, 79, 80, 81, 82, 83, 84, 85, 86. This matter is ripe for review.

## LEGAL STANDARD

Generally, a sentence of imprisonment is final and may not be modified once it has been imposed except in narrow circumstances. 18 U.S.C. § 3582(c). There are narrow circumstances where a court may modify a term of imprisonment including "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c). Motions made under this section are often referred to as "compassionate release" motions. Before filing a motion for compassionate release, a defendant is required to first request that the Bureau of Prisons file a motion on his or her behalf. 18 U.S.C. § 3582(c)(1)(A). A court may grant a motion only if it was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after thirty days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id*.

The compassionate release statute directs the Court to make three considerations: (1) whether extraordinary and compelling reasons warrant a sentence reduction; (2) whether a reduction is consistent with the factors listed in 18 U.S.C. § 3553(a); and (3) whether a reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1). The Seventh Circuit provided further instruction regarding the proper analysis when evaluating a motion for a discretionary sentencing reduction under § 3582(c)(1)(A) based on "extraordinary and compelling" reasons, which includes two steps. *United States v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021).

At step one, the prisoner must identify an "extraordinary and compelling" reason warranting a sentence reduction…. Upon a finding that the prisoner has supplied such a reason, the second step of the analysis requires the district court, in exercising the discretion conferred by the compassionate release statute, to consider any applicable sentencing factors in § 3553(a) as part of determining what sentencing reduction to award the prisoner.

*Id.* The Seventh Circuit has also held that "because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion." *United States v. Gunn,* 980 F.3d 1178, 1180 (7th Cir. 2020). This Court is therefore not bound by the Sentencing Commission's analysis in § 1B1.13 or the application notes regarding the definition of "extraordinary and compelling reasons." *Id*. at 1181.

## DISCUSSION

The Seventh Circuit has made clear that the exhaustion requirement "is a mandatory, claim-processing rule and therefore must be enforced when properly invoked." *United States v. Sanford,* 986 F.3d 779, 782 (7th Cir. 2021). Here, the Government concedes that Defendant met the exhaustion requirement, so the Court can proceed to the merits. The Government specifically provided the Clinical Director's memorandum for the Warden regarding Defendant's motion for compassionate release. The director observed that Bond "has not been diagnosed with a terminal/incurable disease with a life expectancy of 18 months or less . . . nor does he have a disease with an end of life trajectory." ECF No. 70-2. He further noted that Defendant is not completely disabled such that he is confined to a bed or chair for more than fifty percent of waking time and only able to engage in limited self-care. *Id*. The memorandum also observed Defendant did not meet the criteria for elderly inmates since Defendant is under the age of sixty-five and does not suffer from a chronic or serious medical condition that would not respond to conventional treatment. *Id*. Accordingly, the Clinical Director advised against compassionate release.

The Sentencing Commission policy statement in United States Sentencing Guidelines § 1B1.13 addresses sentence reductions based on medical conditions under § 3582(c)(1)(A) . Per the policy statement, an "extraordinary and compelling" medical reason for release can include a serious medical condition that substantially diminishes the defendant's ability to provide self-care within the environment of a correctional facility and from which he is not expected to recover. *See* USSG § 1B1.13, cmt. n.1 (A). While the Seventh Circuit has clarified that courts are not bound by the Sentencing Commission's analysis in § 1B1.13 regarding the definition of "extraordinary and compelling" reasons, it strongly suggested that those guidelines are still relevant to district courts' decisions. *United States v. Gunn*, 980 F.3d at 1180-81 .

A.     **Defendants' Medical Conditions and Treatment**

Defendant primarily complains that he has not received adequate medical care for his pain related to osteoarthritis and specifically complains about back and knee pain. Defendant also cites hypertension and migraines as other relevant medical conditions. He also includes information that his wife is suffering from cancer and generally cites that he has reformed his ways in further support of his motion for release. He claims the facility stopped the medication his doctor prescribed, and he has been in pain. ECF No. 60. Despite numerous appointments with other medical providers, Defendant complains that he has only seen the medical doctor two times in the five months he has been in the facility. ECF No. 84. He also appears to complain that he is unable to have access to certain medication and take them on an as needed basis.

His medical records reveal that he is currently prescribed gabapentin, amitriptyline, and naproxen for his pain. ECF No. 72 at 55. He also has multiple prescriptions to address his hypertension, and he can receive an injection for migraines as needed. ECF No. 72 at 55. He has also had physical therapy appointments, X-rays taken, and an MRI. ECF No. 72. The prison

also ordered and received a special wheeled walker for him to accommodate his height of being 6 foot 5 inches. *Id*. at 26; ECF No. 70 at 9. Defendant has also emailed with certain medical personnel, including the medical doctor. *See e.g.* ECF Nos. 60-1 at 15–19; 62-2; 84.

The Government notes that only six days after Defendant arrived, he drafted his first letter regarding compassionate release. ECF No. 60-1. Defendant states in his daily accounts that he avoided getting his pills several days because he did not like being "talked to like a kid" from one of the individuals distributing the pills. ECF No. 65 at 2. He states in his letters from October that he does not plan to get his medication when that individual is working. *Id*. He did note that his amitriptyline prescription helped him sleep but states that he did not like that it was distributed at 3:30 pm. *Id*. at 3. The Government also observes that Defendant has been alleging "constant pain" and failure of medical personnel to adequately treat his pain for nearly twenty years. ECF No. 70 at 9 (citing ECF No. 64 at 42). The Government further notes that in the past, healthcare providers refused to prescribe Defendant narcotics due to his failure to comply with treatment policies. *Id*. (citing ECF No. 64 at 35). Even in 2010, doctors indicate that Defendant "is not to receive narcotics as there were concerns he was diverting narcotics" and that a certain prescription might be preferred due to "lack of viability as a street drug." ECF No. 64 at 37. Defendant's present conviction also involved selling his own prescriptions. ECF No. 51 at 7. In short, Defendant has a history of being dishonest with his medical providers and diverting drugs.

As a factual matter, the Court is unpersuaded by Defendant's assertion that the "treatment here for [him] has been zero." ECF No. 78. Instead, he had multiple appointments with the physician's assistant and physical therapists, admits to having two appointments with a medical doctor, has emailed with health care providers, gone to sick call, received a special walker and has had X-rays and an MRI taken. He voluntarily chooses to not get his medication because he does

not like the attitude of one of the workers, and he also suggests that certain medications would not work anyway. Defendant appears to have an issue with the procedures in place in that he must get his medicine at certain times, does not have unfettered access to his prescriptions, cannot always see his preferred medical provider, and cannot dictate what prescriptions the doctor prescribes. His complaints are not extraordinary, but the record instead appears to reflect access to extensive healthcare. Even outside of prison, patients must wait for appointments for non-emergencies, and cannot demand their preferred prescription from an unwilling prescriber. This is particularly true here, where Defendant has been found guilty of diverting prescription medication and appears to have a long history of doing so. On the whole it appears, Defendant has received extensive care from a team of medical providers and there is nothing extraordinary or compelling about his situation that would require compassionate release.[1]

### B.  The § 3553(a) Factors Do Not Otherwise Warrant a Sentence Reduction

The Seventh Circuit has held that the proper analysis when evaluating a motion for a discretionary sentencing reduction under § 3582(c)(1)(A) based on "extraordinary and compelling" reasons must proceed in two steps. *Thacker*, 4 F.4th at 576. First, the prisoner must identify an "extraordinary and compelling" reason warranting a sentence reduction. *Id.* Upon a finding that an "extraordinary and compelling" reason exists, step two requires a district court to exercise its discretion to consider any applicable sentencing factor in § 3553(a) to determine what sentence reduction to award the prisoner. *Id.*

Here, this Court found that Defendant failed to identify an "extraordinary and compelling" reason warranting a sentence reduction. Therefore, the Court need not consider the sentencing

---

[1] The Seventh Circuit has also stated that "a compassionate-release motion is not the right vehicle" for "challenges the conditions and medical care at [the prison] more generally." *United States v. Miller*, No. 21-1600, 2022 WL 2187555, at *2 (7th Cir. June 16, 2022)."

factors under § 3553(a). Even if the Court were to reach the  § 3553(a) Factors, those factors otherwise weigh against release. Despite Defendant's ailments, he still engaged in the underlying criminal conduct. He exploited these conditions to sell his own medication as well as drugs he acquired from others. He has also only been incarcerated a handful of months of his overall 88-month sentence, which would be considerably lower than those engaged in similar conduct. Accordingly, the Court would otherwise not be inclined to grant release in these circumstances.

## CONCLUSION

For the reasons set forth above, Defendant's Motion for Compassionate Release [60] is DENIED

ENTERED this 23rd day of January, 2023.

s/ Michael M. Mihm
Michael M. Mihm
United States District Court Judge